AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | | |
|---|---|---|
| United States of America<br>v.<br>Chet Bryant<br><br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No.  17 MJ01377 |

FILED
CLERK, U.S. DISTRICT COURT
JUN - 2 2017
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __10/7/2012, 11/4/2012, 3/10/2013__ in the county of __Los Angeles__ in the
__Central__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 545 | Importing merchandise into the United States contrary to law |

LODGED
2017 JUN -2  AM 11: 55

This criminal complaint is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.

/s/
_____
Complainant's signature

Stephanie Johnson
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/2/17

JACQUELINE CHOOLJIAN
_____
Judge's signature

City and state: Los Angeles, California         Jacqueline Chooljian, U.S. Magistrate Judge
_____
Printed name and title

# AFFIDAVIT

I, Stephanie Johnson, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the U.S. Fish and Wildlife Service ("FWS"), Office of Law Enforcement. I am presently assigned to the Torrance, California, field office and have been so employed since June of 2011. In that capacity, I am responsible for the investigation of, among other things, violations of the Endangered Species Act, 16 U.S.C. § 1531, *et seq.*, and other related statues, including the smuggling statutes under Title 18 of the United States Code. Prior to obtaining a position with the FWS as a Special Agent, I was employed as a Refuge Officer for the FWS at the Wichita Mountains National Wildlife Refuge near Indiahoma, Oklahoma between 2008 and 2011, and as a Refuge Officer for the FWS at the Rocky Mountain Arsenal National Wildlife Refuge, in Commerce City, Colorado, between 2004 and 2008. During the last 14 years, I have handled complex fish and wildlife investigations involving violations related to the interstate and international trafficking of wildlife.

## II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of a criminal complaint against and arrest warrant for CHET BRYANT for a violation of Title 18, United States Code, Section 545 (importing merchandise into the United States contrary to law).

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and/or information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and/or in part only.

## III. APPLICABLE LAW

4. The Endangered Species Act ("ESA") is a federal law that, among other things, regulates the importation and exportation of certain wildlife and plants to and from the United

1

States, and implements the United States' obligations under the Convention on the International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). Pursuant to the ESA, the Secretary of the Interior may prescribe such regulations as are necessary to carry out the purposes of the ESA. 16 U.S.C. § 1538(d)(3).

5. CITES is an international agreement among approximately 183 nations, including the United States, Vietnam, and Costa Rica, that establishes certain requirements that must be met before CITES-protected wildlife may be imported or exported from signatory nations. Wildlife protected under CITES is listed in a series of appendices (Appendix I, II, and III). The level of trade restrictions applicable to a particular type of wildlife is governed by the specific appendix that lists that wildlife.

6. Appendix II lists wildlife that is not necessarily now threatened with extinction but that may become so unless trade is closely controlled. 50 C.F.R. § 23.4. CITES-protected wildlife listed in Appendix II includes the animal, whether dead or alive, and any readily recognizable part or derivative thereof. See 50 C.F.R. § 23.4; CITES, art. I(b), Mar. 3, 1973, 27 U.S.T. 1087, 993 U.N.T.S. 243. Unless an exemption applies, trade in Appendix II wildlife requires a CITES export or re-export certificate issued by the country of export. 50 C.F.R. §§ 23.13, 23.20. "Trade" as the term is used under CITES means the same as "international trade," which includes the export across jurisdictional or international boundaries for any purpose whether commercial or noncommercial. 50 C.F.R. § 23.5.

7. All corals within the order Scleractinia are included in Appendix II of CITES, including, among others, the following genera: *Acanthastrea, Cynaria, Euphyllia, Fungia, Goniopora, Lobophyllia,* and *Trachyphyllia*. Corals within the order Scleractinia are also known as stony corals. 50 C.F.R. § 23.5.

8. The ESA prohibits trade in any specimens contrary to the provisions of CITES. 16 U.S.C. §§ 1538(c), 1540(b).

9.  Federal regulations require an importer or exporter of wildlife to complete the FWS Declaration for the Importation or Exportation of Fish or Wildlife (Form 3-177) and submit the form to the FWS. 50 C.F.R. §§ 14.61, 14.63.

10. Title 18, United States Code, Section 545 prohibits one from knowingly or fraudulently importing merchandise contrary to law. It also prohibits the sale of such merchandise knowing the same to have been imported or brought into the United States contrary to law.

### IV. STATEMENT OF PROBABLE CAUSE

11. On October 7, 2012, I received a phone call from FWS Wildlife Inspector ("WI") Laurie Hilliard regarding an inbound shipment she was inspecting at the China Airlines Cargo Facility at the Los Angeles International Airport ("LAX"). WI Hilliard told me that she had discovered multiple pieces of coral that had not been declared to the FWS and appeared to be hidden within a shipment from Vietnam.

12. When I arrived at the China Airlines Cargo Facility, WI Hilliard indicated that a company, Renaissance Aquatics, Inc. ("Renaissance"), had imported the shipment and that the shipment contained clams and Scleractinia[1] in addition to the undeclared pieces of live coral. WI

---

[1] Scleractinia is an order within the kingdom Animalia that consists of stony corals. Based on my training and experience, when WI Hilliard used the term "Scleractinia," I understood her to mean Scleractinian coral rock, rather than live stony corals. Coral rock means hard consolidated material greater than 30 mm measured in any direction that consists of pieces of stony coral that contain no living coral tissue and possibly also cemented sand, coralline algae, or other sedimentary rocks. 50 C.F.R. § 23.5. Coral rock includes live rock and substrate, which are terms for pieces of coral rock to which other live specimens are attached, including other invertebrate species or coralline algae that are not listed in the CITES appendices. Id. Scleractinian coral rock refers to coral rock that contains pieces, parts, or derivatives of dead coral from the order Scleractinia, but where the precise genus of the dead stony coral cannot be identified.

Based on my training and experience, I know that a person may obtain from Vietnam a CITES export permit for Scleractinian coral rock. However, I also know that Vietnam will not issue a CITES export permit for live stony corals, including the coral genera in this case.

3

Hilliard showed me FWS Form 3-177, which only reflected clams, Scleractinia, and seahorses, but did not list the additional pieces of live stony coral.[2]

13.     WI Hilliard showed me various plastic bags from the shipment that contained the undeclared corals. The undeclared corals were packed in the following manner. Each clear plastic bag contained saltwater and a large piece of Scleractinian coral rock (which was declared on FWS Form 3-177 as "Scleractinia") covering smaller pieces of live stony coral that were not declared on FWS Form 3-177. Newspaper covered each clear plastic bag from approximately the middle of the bag down to – and including – the bottom of the bag. As a result, a person looking at the plastic bag from the top or a side of the bag would likely only be able to see the Scleractinian coral rock and not the undeclared pieces of stony coral underneath the coral rock and behind the newspaper wrapping. Each newspaper-wrapped plastic bag was further packed into another clear plastic bag. Due to this packaging method, the undeclared live corals were only visible if the inner plastic bag and newspaper wrapping were removed from the outer plastic bag and closely inspected, or if the Scleractinian coral rock was removed from the inner plastic bag. Furthermore, I was informed that the plastic bags containing the live, undeclared stony corals were packed in the bottom layer of each box in which they were found, underneath other bags of marine wildlife.

14.     During the inspection, WI Hilliard told me that in May 2012, she inspected a prior inbound shipment to Renaissance that contained undeclared stony corals from the same supplier in Vietnam. WI Hilliard informed me that the undeclared corals found in the October 7, 2012,

---

[2] Based on my training and experience, I know that the disclosure of "Scleractinia" on FWS Form 3-177 and CITES permits refers to Scleractinian coral rock. This is, in fact, a departure from the general instructions of FWS Form 3-177 and CITES permits, which require that the specimens be identified by genus and species name. On April 26, 2011, the FWS issued a Notice to the Wildlife Import/Export Community (revised May 15, 2013) regarding Identification of CITES Hard Corals, which indicates that the FWS will accept CITES permits and certificates for specimens that are readily recognizable as coral rock, but where the genus cannot be determined, when the specimens are identified as the Order Scleractinia. I know from my training and experience that the FWS has followed the same guidance with respect to declaring Scleractinian coral rock on FWS Form 3-177. As a result, I understood the form filed to represent that the shipment contained Scleractinian coral rock.

4

shipment were packed in the same manner (i.e., concealed underneath pieces of Scleractinia coral rock) that the undeclared corals had been packed in the May 2012 shipment.

15. I have reviewed a report of investigation prepared by WI Hilliard pertaining to the May 2012 shipment. According to the report, on May 20, 2012, WI Hilliard discovered 52 pieces of live CITES-protected Scleractinian coral in that shipment that were not declared to the FWS. The report also noted that the driver for Renaissance abandoned the corals to FWS after conferring by phone with his manager.

16. On October 7, 2012, while WI Hilliard inspected the shipment, I marked the undeclared pieces of stony coral. In total, there were 36 pieces of undeclared live stony coral. Of those 36 pieces, 28 pieces belonged to the genus *Euphyllia* and eight belonged to the genus *Trachyphyllia*, both of which are listed in CITES Appendix II.

17. On October 7, 2012, I also reviewed the import paperwork included with the October 7, 2012, shipment and did not see *Euphyllia* or *Trachyphyllia* listed on the FWS Form 3-177 or on the CITES export permit from Vietnam.

18. On November 4, 2012, I received a phone call from FWS SA Ed Newcomer notifying me that he had received a call from WI Hilliard, and that WI Hilliard had indicated that Renaissance imported another shipment to LAX. SA Newcomer further informed me that WI Hilliard discovered undeclared corals concealed in the shipment.

19. On November 4, 2012, I went to LAX and met with SA Newcomer and WI Hilliard. After arriving at LAX, I observed that live stony corals had been packed in the shipment in the same manner as the undeclared corals had been packed in the October 7, 2012, shipment. In total, there were 108 pieces of live stony coral in the shipment. The coral genera were identified by WI Hilliard as *Euphyllia, Trachyphyllia,* and *Acanthestrea*, all of which are listed in CITES Appendix II.

20. On November 4, 2012, I also reviewed the import paperwork included with the November 4, 2012, shipment and did not see any stony corals declared on FWS Form 3-177 or on the CITES export permit from Vietnam. WI Hilliard explained that she had contacted

5

BRYANT, the manager of Renaissance, and was going to meet with him. SA Newcomer and I marked the undeclared live stony corals with discreet, unique identifiers and returned the corals to their original bags. The corals were subsequently released by FWS for pick up by Renaissance.

21. On or about November 5, 2012, SA Newcomer informed me that, while acting in an undercover capacity, he met BRYANT at Renaissance and discussed purchasing corals from Renaissance in the future.

22. On November 6, 2012, SA Newcomer and I, both acting in an undercover capacity, went to Renaissance and met with BRYANT. As BRYANT showed us around the warehouse, I observed several partitioned areas within a large tank that contained pieces of *Euphyllia* and *Trachyphyllia* that were similar in appearance to the stony corals we had marked from the shipments that came into LAX on October 7, 2012, and November 4, 2012. When SA Newcomer asked BRYANT about the origin of those corals, BRYANT said that he imported them from Australia on Sunday (which was November 4, 2012). BRYANT also indicated that pieces of Scleractinian coral rock located in another large partitioned tank had been imported from Vietnam on November 4, 2012.

23. BRYANT provided SA Newcomer and me with a plastic tub filled with saltwater and said to pick out the corals we were interested in and to place them in that container. After BRYANT walked away, SA Newcomer and I picked up various pieces of *Euphyllia* and *Trachyphyllia* and saw the markings we had made on the corals on October 7, 2012, and November 4, 2012. In total, we picked out 31 pieces of live stony corals, all of which we had previously marked during the inspection at LAX. We notified BRYANT of the corals we wished to purchase. BRYANT prepared an invoice for $1,272.92 and we purchased the corals.

24. On November 18, 2012, WI Hilliard inspected a shipment of live fish at LAX that Renaissance attempted to export to Costa Rica. During her inspection, WI Hilliard discovered multiple pieces of live coral and Scleractinian coral rock that were not included on the invoice included with the shipment and were not accompanied by the requisite CITES export permit.

The live corals consisted of *Euphyllia, Fungia,* and *Goniopora,* all of which are listed on CITES Appendix II. Because there was no CITES permit for these corals, WI Hilliard seized them.

25. I have reviewed a report of investigation prepared by WI Hilliard pertaining to this shipment. According to the report, there were six pieces of live stony corals and 13 pieces of Scleractinian coral rock in the shipment. The report also indicates that WI Hilliard contacted BRYANT on November 20, 2012, and that BRYANT stated that he did not believe a CITES permit accompanied the shipment and that the CITES specimens may have been inadvertently included in that shipment. According to WI Hilliard's report, BRYANT stated that he was aware that such specimens required a CITES certificate in international trade and that he did not intend to contest the seizure.

26. On January 18, 2013, SA Newcomer and I, both acting in an undercover capacity, met with BRYANT at a Red Lobster restaurant in Inglewood, California. SA Newcomer and I posed as commercial coral dealers and met with BRYANT on the pretext of discussing future purchases of live corals from Renaissance. During that meeting, SA Newcomer asked BRYANT about obtaining CITES permits for exports to Costa Rica. BRYANT responded, "…I was shipping corals to Costa Rica for a long time. On his end, it was fine. This guy would order every two weeks, like, a pretty good sized order. Then all of the sudden the other day I get caught." BRYANT also indicated that he had exported coral for a couple of years and admitted that he had been "taking the low road, the easy road." BRYANT explained that to export properly, he would have to submit paperwork which takes time to complete and wait for approval, and that the paperwork is only valid for one shipment. BRYANT also told us that when he got caught attempting to export coral without the required documentation, he told the Wildlife Inspector, "Oh it must've been ordered and I must've not realized that. We had a new guy checking fish so he didn't realize… it was a coding issue."

27. On December 2, 2012, December 28, 2012, February 3, 2013, and February 17, 2013, Renaissance imported additional shipments of fish and/or clams, as well as Scleractinian coral rock, from Vietnam. Hidden among items in each of these shipments were undeclared

7

pieces of live stony corals listed in CITES Appendix II. All of the undeclared corals that were discovered had been packaged in the same manner as the undeclared corals from prior shipments described above. The amount of undeclared CITES-protected coral contained in each shipment ranged from 80 pieces to 190 pieces. I assisted with the inspection of each of these shipments and with the marking of all of the undeclared pieces of coral before they were released to Renaissance.

28. Subsequent to the December 2, 2012 shipment, and subsequent to the February 3, 2013 shipment, I went to Renaissance in an undercover capacity, and, on each occasion, I purchased some of the illegally imported stony coral that I was able to identify by the markings that were made when the corals were inspected at LAX. Each time I purchased coral, I met with BRYANT and he provided me with an invoice for the corals I purchased.

29. On March 10, 2013, I learned from SA Newcomer that Renaissance had imported another shipment from Vietnam that contained undeclared CITES-protected corals, namely, *Euphyllia*. According to a report of investigation pertaining to that shipment, SA Newcomer reviewed the import paperwork with WI Hilliard and confirmed that there was no CITES permit authorizing the importation of *Euhpyllia*, that Renaissance did not declare the importation of any *Euphyllia* on FWS Form 3-177, and that 44 pieces of live *Euphyllia* were confiscated from that shipment.

30. On March 11, 2013, BRYANT appeared at the FWS office in Torrance, California, for an interview regarding the seizure of coral on March 10, 2013. The interview was conducted by FWS SAs Erin Dean and Jesica Espinoza, and I listened to the interview from an adjoining room. During the interview, BYRANT denied ever having received CITES-protected stony corals from Vietnam except on the two occasions that he knew shipments had been intercepted by the FWS, namely, in May 2012, and on March 10, 2013. After he was confronted with evidence from this investigation, BRYANT admitted that he did, in fact, order and receive live CITES-protected stony corals from Vietnam on numerous occasions and that he imported those corals without declaring them to the FWS.

8

31. During the course of his interview, BRYANT also admitted that he previously observed FWS Wildlife Inspectors conducting inspections of live coral shipments and noticed that the inspectors usually only checked the upper layer of live fish and corals packed inside the boxes. BRYANT said that based on this observation, he directed his supplier to place all of the coral on the bottom layer of the shipping boxes.

32. On March 11, 2013, the FWS executed a search warrant at Renaissance in Inglewood, California. While the search was underway, BRYANT logged into his email account and showed SA Newcomer the various email communications he had with the Vietnamese supplier regarding the purchase and shipment of live CITES-protected corals. BRYANT admitted that the Vietnamese supplier would prepare two separate – but almost identical – invoices for each shipment: one to be submitted with other paperwork to the FWS as part of the import declaration materials, and another, which BRYANT described as "the real invoice," that reflected the purchase of live stony corals. BRYANT reviewed some of the "real invoices" with SA Newcomer and explained that an entry listed near the bottom of the invoice with the letters "HC" was a code for "hard corals." BRYANT admitted that when "HC" appeared on the invoice, it meant that the shipment included hard corals that were not declared to the FWS.

33. Based on my training and experience and investigation in this case and other coral investigations, I know that the term "hard corals" is another term used to describe stony corals of the order Scleractinia.

//
//
//
//
//
//

## V. CONCLUSION

34. For all the reasons described above, there is probable cause to believe that BRYANT committed a violation of Title 18, United States Code, Section 545 (importing merchandise into the United States contrary to law).

/s/
STEPHANIE JOHNSON, Special Agent
U.S. Fish and Wildlife Service

Subscribed to and sworn before me
this __ day of June, 2017

JACQUELINE CHOOLJIAN

HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE

10